```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                        Case No. 12-80030-CR-MARRA
 3
    UNITED STATES OF AMERICA,      )
 4                                 )
         GOVERNMENT,               )
 5                                 )
         -v-                       )
 6                                 )
    RAUL SALABARRIA AND            )
 7  THEODORE TARONE, JR.,          )
                                   )
 8       DEFENDANT.                )   West Palm Beach, Florida
                                   )   June 6, 2012
 9  _____)

10

11            TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

12            BEFORE THE HONORABLE KENNETH A. MARRA

13                 UNITED STATES DISTRICT JUDGE

14  Appearances:

15  FOR THE GOVERNMENT          Kerry S. Baron, AUSA
                                United States Attorney's Office
16                              500 South Australian Avenue
                                Suite 400
17                              West Palm Beach, FL 33401

18  FOR DEFENDANT SALABARRIA    Valentin Rodriguez, Jr., ESQ.
                                120 South Dixie Highway, Suite 204
19                              West Palm Beach, FL 33401

20  FOR DEFENDANT TARONE        David L. Roth, ESQ.
                                Roth & Duncan
21                              515 North Flagler Drive, Suite 325
                                P.O. Box 770
22                              West Palm Beach, FL 33402

23  Reporter                    Stephen W. Franklin, RMR, CRR, CPE
    (561)514-3768               Official Court Reporter
24                              701 Clematis Street
                                West Palm Beach, Florida  33401
25                              E-mail:  SFranklinUSDC@aol.com
```

```
 1          (Call to the order of the Court.)

 2          THE COURT:  Good afternoon, please be seated.

 3          We're here in the case of the United States of

 4   America versus Raul Salabarria and Theodore Tarone, Case

 5   Number 12-80030-CR-MARRA.

 6          May I have counsel state their appearances, please.

 7          MR. BARON:  Good afternoon, Your Honor.  Kerry Baron,

 8   Assistant United States Attorney.  With me at counsel table is

 9   Special Agent Stephanie Busco, of the FBI, and Ted Battich

10   (phonetic), of the State Office of Financial Regulation --

11   Financial Services, excuse me.

12          THE COURT:  Good afternoon.

13          MR. ROTH:  Good afternoon, Your Honor.  With me is my

14   client, Mr. Tarone.  David Roth, of the law firm of Roth &

15   Duncan.

16          Judge, my client's name is Tarone, Jr., and I've

17   spoken with Mr. Baron, who's aware of that, and with the

18   Court's consent, the Government and the Defendant would

19   respectfully request that the documents in this file be

20   reflected as to his true name, which is Theodore Tarone, Jr.

21          THE COURT:  Okay.  I can say that's fine with me, but

22   I can guarantee you that unless something is filed in the

23   court file that actually changes it, it's going to always and

24   forever show up ask Tarone without a Jr. on it.  So I have no

25   problem with it.  I'll accept that.
```

```
 1              MR. ROTH:  Judge, I will submit to Your Honor with
 2     Mr. Baron's consent --
 3              MR. BARON:  No objection.
 4              MR. ROTH:  -- an agreed order reflecting that the
 5     Defendant's true name is Theodore Tarone, Jr., and that the
 6     file should so reflect.
 7              MR. BARON:  No objection, Your Honor, to that filing.
 8              THE COURT:  Again, I'm not guaranteeing that that
 9     will change anything.
10              MR. ROTH:  As they say, Judge, there are few
11     guarantees.
12              THE COURT:  So I will be happy to sign that order.
13              MR. ROTH:  Thank you, Your Honor.
14              MR. RODRIGUEZ:  Good afternoon, Your Honor.  Val
15     Rodriguez, on behalf of Raul Salabarria.
16              THE COURT:  Good afternoon.
17              All right.  We are here for changes of plea, so if I
18     can have both defendants, one at the microphone and the other
19     at the lecturn, and we'll proceed.
20              THE COURTROOM DEPUTY:  Please raise your right hand.
21         (Defendants duly sworn.)
22              THE COURTROOM DEPUTY:  Each of you please state your
23     name for the record one at a time, please.
24              DEFENDANT TARONE:  Theodore Thomas Tarone, Jr.
25              DEFENDANT SALABARRIA:  Raul Salabarria.
```

```
 1                     Examination

 2   BY THE COURT:

 3   Q    Gentlemen, good afternoon.

 4          I'm going to be asking you both a series of questions

 5   which, for the most part, will be the same as to each of you.

 6   When I do speak to you, in order to -- for the court reporter

 7   to keep track of who's speaking when, I'm going to ask you to

 8   try and answer the questions in the same order, so that the

 9   court reporter knows who's going to be speaking.  Mr.Tarone,

10   if you can answer the questions first, and Mr. Salabarria, if

11   you could answer the questions second.

12          There will be times when I will be speaking to you

13   individually.  So when I do speak to you individually, I'll

14   let you know, and then you can just answer the questions

15   yourself.  But otherwise I'm directing my questions to both of

16   you at the same time, and if you could answer them in that

17   same order it will make things run a little more smoothly.

18          Now, gentlemen, do you both understand you're now

19   under oath, and if you make any false statements to me during

20   our discussion, those false statements could later be used

21   against you in a prosecution for perjury or making a false

22   statement?

23   A    (Tarone) Yes, Your Honor.

24   A    (Salabarria) Yes, Your Honor.

25   Q    How old are each of you?
```

```
 1    A    (Tarone) I'm Theodore Tarone, 43 years old.

 2    A    (Salabarria) Fifty-five.

 3    Q    And have either of you taken any drugs, medicine or

 4    alcohol that might affect your ability to understand today's

 5    proceedings or affect your ability to make a knowing and

 6    intelligent decision regarding your case?

 7    A    (Tarone) No, Your Honor.

 8    A    (Salabarria) No, Your Honor.

 9    Q    Can you both read and write English?

10    A    (Tarone) Yes, Your Honor.

11    A    (Salabarria) Yes, Your Honor.

12    Q    Have either of you ever been treated for or suffered from

13    any type of mental disease or illness?

14    A    (Tarone) I've suffered from depression.

15    Q    All right.  Are you still suffering from depression?

16    A    (Tarone) Yes, I'm under doctor's care for that and have

17    been for many years.

18    Q    All right.  And is the depression from which you're

19    suffering currently in any way affecting your ability to think

20    clearly today or in any way affecting your ability to make a

21    knowing and intelligent decision regarding your case?

22    A    (Tarone) No, Your Honor.

23    Q    Is there anything about your depression that's in any way

24    affecting your ability to communicate with your lawyer at any

25    time or understand the advice he's provided to you?
```

```
 1    A    (Tarone) No, Your Honor.

 2    Q    Sir, how about you?

 3    A    (Salabarria) Anxiety disorder.  It was diagnosed 2004

 4    by -- I was a deputy sheriff, and I had to take an early

 5    retirement because of that.

 6    Q    And is there anything about the anxiety disorder that you

 7    suffered from in the past that's in any way affecting your

 8    ability today to think clearly or to make a knowing and

 9    intelligent decision regarding your case?

10    A    (Salabarria) No, Your Honor.

11    Q    Anything about that anxiety disorder that's in any way

12    affected your ability to communicate with your lawyer or

13    understand his recommendations and advice to you?

14    A    (Salabarria) No, Your Honor.

15    Q    How much education have each of you had?

16    A    (Tarone) I've gone through undergraduate, and I have a

17    juris doctorate from Nova Southeastern.

18    A    (Salabarria) Some college, Your Honor.

19    Q    And have either of you ever been treated for or suffered

20    from any type of drug or chemical addictions?

21    A    (Tarone) Yes, Your Honor, it's been documented in this

22    case.

23    Q    And what type of addictions have you suffered from?

24    A    Drug addiction and alcohol abuse and treatment, and it's

25    been in the file.
```

```
 1    Q    Is there anything about your drug use in the past that's
 2    in any way affecting your ability, again, to think clearly
 3    today or make a knowing and intelligent decision regarding
 4    your case?
 5    A    (Tarone) No, Your Honor.
 6    Q    Sir, how about you?
 7    A    (Salabarria) No, Your Honor.
 8    Q    Now, gentlemen, it's my understanding that you've reached
 9    an agreement with the United States as to how you and the
10    Government believe your particular case should be resolved,
11    and I've been handed a document related to each of you which
12    is entitled a "Plea Agreement."
13          Mr. Tarone, have you seen the document that I'm
14    holding that's entitled a "Plea Agreement?"
15    A    (Tarone) Yes, I have, Your Honor.
16    Q    And Mr. Salabarria, have you seen your plea agreement?
17    A    (Salabarria) Yes, Your Honor.
18    Q    And did you each read your plea agreement?
19    A    (Tarone) Yes, Your Honor.
20    A    (Salabarria) Yes, Your Honor.
21    Q    And after you read it, did you discuss your plea agreement
22    with your attorney?
23    A    (Tarone) Yes, Your Honor.
24    A    (Salabarria) Yes, Your Honor.
25    Q    And after you read your plea agreement and discussed it
```

```
 1   with your attorney, did you have a full and complete
 2   understanding of the charge that's been brought against you in
 3   this case?
 4   A   (Tarone) Yes, Your Honor.
 5   A   (Salabarria) Yes, Your Honor.
 6   Q   And, I'm sorry, I kinda skipped ahead before I get to the
 7   plea agreement.  I need to talk --
 8           MR. ROTH:  Judge, before you do that, I have a broken
 9   foot.  Do you mind if I move a chair up?
10           THE COURT:  No.  If you want -- rather sit down and
11   speak from there, that's fine.
12   BY THE COURT
13   Q   I'm sorry, gentlemen.  I should have talked to you about
14   the charging document in this case before I talked about the
15   plea agreement.  So I apologize.  I jumped ahead a little bit.
16   So let me backtrack.
17           Have each of you seen the charging document in this
18   case called an information that was filed by the United States
19   against you and others in this case?
20   A   (Tarone) Yes, Your Honor.
21   A   (Salabarria) Yes, Your Honor.
22   Q   And did you each read that information?
23   A   (Tarone) Yes, Your Honor.
24   A   (Salabarria) Yes, Your Honor.
25   Q   And after you each read the information, did you discuss
```

```
 1    it fully and completely with your attorney?

 2    A   (Tarone) Yes, Your Honor.

 3    A   (Salabarria) Yes, Your Honor.

 4    Q   And after you read the information and discussed it with

 5    your attorney, did you have a full and complete understanding

 6    of the charges that have been brought -- or the charge that's

 7    been brought against you in this case?

 8    A   (Tarone) Yes, Your Honor.

 9    A   (Salabarria) Yes, Your Honor.

10    Q   Did you discuss with your attorney the evidence the United

11    States has gathered and intends to present against you if this

12    case were to proceed to a trial?

13    A   (Tarone) Yes, Your Honor.

14    A   (Salabarria) Yes, Your Honor.

15    Q   Did you discuss with your attorney any defenses that you

16    might have to this charge?

17    A   (Tarone) Yes, Your Honor.

18    A   (Salabarria) Yes, Your Honor.

19    Q   Do you believe your attorney has done everything he could

20    to defend you in this case?

21    A   (Tarone) Yes, Your Honor.

22    A   (Salabarria) Yes, Your Honor.

23    Q   Is there anything your attorney has not done that you

24    believe he should have done in order to defend you in this

25    case?
```

```
 1    A    (Tarone) No, Your Honor.

 2    A    (Salabarria) No, Your Honor.

 3    Q    Are you satisfied you have received competent

 4    representation from your attorney in this case?

 5    A    (Tarone) Yes, Your Honor.

 6    A    (Salabarria) Yes, Your Honor.

 7    Q    Now, do each of you understand that before the United

 8    States could proceed with this charge against you, you had the

 9    right to require the United States to go before a grand jury

10    and obtain an indictment from the grand jury before they could

11    proceed with this charge against you?

12    A    (Tarone) Yes, Your Honor.

13    A    (Salabarria) Yes, Your Honor.

14    Q    And had you discussed that right to a grand jury

15    indictment from the -- with your attorney?

16    A    (Tarone) Yes, Your Honor.

17    A    (Salabarria) Yes, Your Honor.

18    Q    And did you understand that right after you discussed it

19    with your attorney?

20    A    (Tarone) Yes, Your Honor.

21    A    (Salabarria) Yes, Your Honor.

22    Q    And did you agree to give up your right to a grand jury

23    indictment in this case by signing a waiver of indictment

24    which is -- was signed before Magistrate Judge Hopkins on

25    February 24th in your case, Mr. Salabarria, and on
```

```
 1    February 29th in your case, Mr. Tarone?  Did you both sign

 2    these waivers?

 3    A    (Tarone) Yes, Your Honor.

 4    A    (Salabarria) Yes, Your Honor.

 5    Q    Did you sign the waiver of an indictment freely and

 6    voluntarily?

 7    A    (Tarone) Yes, Your Honor.

 8    A    (Salabarria) Yes, Your Honor.

 9    Q    Did anyone force or threaten you to give that up right?

10    A    (Tarone) No, Your Honor.

11    A    (Salabarria) No, Your Honor.

12    Q    And, again, did you give up that right freely and

13    voluntarily?

14    A    (Tarone) Yes, Your Honor.

15    A    (Salabarria) Yes, Your Honor.

16    Q    Now, gentlemen, it's my understanding, as I started to say

17    a minute or so ago, that you and the Government have reached

18    agreements as to how you believe your cases should be

19    resolved, and I've been handed these documents that are

20    entitled a "Plea Agreement," one for each of you.

21         And Mr. Tarone, you've told me you've seen your plea

22    agreement; is that correct?

23    A    (Tarone) Yes, Your Honor.

24    Q    And Mr. Salabarria, you've seen yours?

25    A    (Salabarria) Yes, Your Honor.
```

```
1    Q    And did you each read that plea agreement?

2    A    (Tarone) Yes, Your Honor.

3    A    (Salabarria) Yes, Your Honor.

4    Q    And after you read it, did you discuss it fully and

5    completely with your attorney?

6    A    (Tarone) Yes, Your Honor.

7    A    (Salabarria) Yes, Your Honor.

8    Q    And after you read the plea agreement and discussed it

9    with your attorney, did you have a full and complete

10   understanding of all the terms and provisions of the plea

11   agreement?

12   A    (Tarone) Yes, Your Honor.

13   A    (Salabarria) Yes, Your Honor.

14   Q    After you read the plea agreement and discussed it with

15   your attorney and understood it, did you sign your plea

16   agreement on the last page on that bottom signature line?

17          Mr. Tarone, is that your signature?

18   A    (Tarone) Yes, Your Honor.

19   Q    Mr. Salabarria, that's yours on your plea agreement, as

20   well; is that correct?

21   A    (Salabarria) Yes, Your Honor.

22   Q    Did you each sign your plea agreement freely and

23   voluntarily?

24   A    (Tarone) Yes, Your Honor.

25   A    (Salabarria) Yes, Your Honor.
```

```
 1    Q    Did anyone force or threaten either of you to sign your

 2    plea agreement?

 3    A    (Tarone) No, Your Honor.

 4    A    (Salabarria) No, Your Honor.

 5    Q    Did anyone force or threaten either of you to come here

 6    today to change your plea from not guilty to guilty?

 7    A    (Tarone) No, Your Honor.

 8    A    (Salabarria) No, Your Honor.

 9    Q    You're both doing this freely and voluntarily?

10    A    (Tarone) Yes, Your Honor.

11    A    (Salabarria) Yes, Your Honor.

12    Q    Now, according to your plea agreements, you each are going

13    to plead guilty to the one count of the indictment --

14             MR. BARON:  Information, Your Honor.

15             THE COURT:  Excuse me, I'm sorry.  Information, thank

16    you.

17    BY THE COURT:

18    Q    You have each agreed to plead guilty to the one count of

19    the information.  And that count charges or alleges that you

20    both agreed with each other and others to conspire to commit

21    the offense of mail fraud, in violation of Title 18 of the

22    United States Code, Section 1341, all in violation of Title 18

23    of the United States Code, Section 1349.

24             Do you understand that's the charge to which each of

25    you are pleading guilty?
```

```
1    A    (Tarone) Yes, Your Honor.

2    A    (Salabarria) Yes, Your Honor.

3    Q    And do you both understand that by pleading guilty to this

4    one charge, the maximum term of imprisonment that can be

5    imposed upon each of you is 30 years in prison?

6    A    (Tarone) Yes, Your Honor.

7    A    (Salabarria) Yes, Your Honor.

8    Q    And do you both understand that in addition to any term of

9    imprisonment that can be imposed upon you, you could be placed

10   on supervised release for up to five years?

11   A    (Tarone) Yes, Your Honor.

12   A    (Salabarria) Yes, Your Honor.

13   Q    And do you both understand that if you are placed on

14   supervised release, you would be required to follow and abide

15   by certain rules, regulations and conditions imposed by the

16   Court?

17   A    (Tarone) Yes, Your Honor.

18   A    (Salabarria) Yes, Your Honor.

19   Q    And do you understand that if you violate or fail to

20   comply with the terms of your supervised release, you could be

21   sent back to prison for an additional period of time?

22   A    (Tarone) Yes, Your Honor.

23   A    (Salabarria) Yes, Your Honor.

24   Q    Do you understand that in addition to any term of

25   imprisonment or term of supervised release, you could be fined
```

```
 1    in this case up to $1 million?

 2    A    (Tarone) Yes, Your Honor.

 3    A    (Salabarria) Yes, Your Honor.

 4    Q    And do you understand you both could be ordered to pay

 5    restitution to reimburse anyone that may have suffered a loss

 6    as a result of your conduct?

 7    A    (Tarone) Yes, Your Honor.

 8    A    (Salabarria) Yes, Your Honor.

 9    Q    Do you understand by pleading guilty to this one count, a

10    special assessment of $100 will be imposed upon each of you at

11    the time of sentencing?

12    A    (Tarone) Yes, Your Honor.

13    A    (Salabarria) Yes, Your Honor.

14    Q    Now, do you both understand that in order for me to

15    determine an appropriate sentence to impose upon you in this

16    case, I am required to consider as one of the factors what the

17    Federal Sentencing Guidelines call for as what we describe an

18    advisory guideline sentence?

19    A    (Tarone) Yes, Your Honor.

20    A    (Salabarria) Yes, Your Honor.

21    Q    Do you understand that as I sit here today, I do not have

22    all the information I need to be able to tell you today what

23    the correct guideline sentencing range would be for your

24    cases?

25    A    (Tarone) Yes, Your Honor.
```

```
 1    A    (Salabarria) Yes, Your Honor.

 2    Q    Do you understand in order for me to get the information I

 3    need to determine the correct guideline sentencing range for

 4    your case, and also to determine an appropriate sentence to

 5    impose upon each of you, I am going to order the probation

 6    office to prepare what's called a presentence investigation

 7    report?

 8    A    (Tarone) Yes, Your Honor.

 9    A    (Salabarria) Yes, Your Honor.

10    Q    Do you understand that the probation office will

11    investigate this case for me and provide me with a detailed

12    report, which will outline all the facts of the case, it will

13    outline for me your respective roles, or involvement in the

14    case as compared to each other and as compared to the others

15    that were involved, it will provide me with information about

16    each of your backgrounds, including any criminal history that

17    either of you might have, and then based upon the information

18    that the probation office gathers, they will make a

19    recommendation to me as to what they believe the correct

20    guideline sentencing range should be for your case?

21    A    (Tarone) Yes, Your Honor.

22    A    (Salabarria) Yes, Your Honor.

23    Q    Do you understand that after that report is prepared, you

24    and your attorney will have the opportunity to review that

25    report, and you will be able to file objections to anything in
```

```
 1    the report that you believe is either factually or legally

 2    incorrect?

 3    A    (Tarone) Yes, Your Honor.

 4    A    (Salabarria) Yes, Your Honor.

 5    Q    Do you understand the United States will have the same

 6    right to review the report and file objections to anything it

 7    believes is incorrect?

 8    A    (Tarone) Yes, Your Honor.

 9    A    (Salabarria) Yes, Your Honor.

10    Q    Do you understand that after the report is prepared and

11    any objections are filed, we then will have a sentencing

12    hearing for each of you, at which time you and your attorney

13    will have the opportunity to present to me any evidence or

14    argument in support of your position regarding the guideline

15    sentencing range if you disagree with the probation officer's

16    conclusions regarding the guideline sentencing range?  You

17    will also be able to present to me any evidence or argument in

18    support of the sentence you believe I should impose upon you

19    in this case.  The United States will have the same right to

20    present evidence and argument in support of its position

21    regarding the guideline sentencing range and its position

22    regarding the sentence it believes I should impose upon you in

23    this case.  And then after I've heard everything and reviewed

24    everything, I will then decide what the correct guideline

25    sentencing range is for your case, and then I will decide what
```

```
 1    the sentence will be for each of you.

 2          Do you understand that's the procedure?

 3    A    (Tarone) Yes, Your Honor.

 4    A    (Salabarria) Yes, Your Honor.

 5    Q    So do you understand until we go through that entire

 6    procedure and I actually make decisions at the time of

 7    sentencing, no one knows for sure what the correct guideline

 8    sentencing range will turn out to be, and no one knows for

 9    sure what the actual sentence will turn out to be?

10    A    (Tarone) Yes, Your Honor.

11    A    (Salabarria) Yes, Your Honor.

12    Q    So even though your attorney may have advised you based

13    upon his understanding of the facts of the case and his

14    understanding of the law and the Sentencing Guidelines what he

15    thinks or believes, in his best professional opinion, the

16    advisory guideline sentencing range will turn out to be, or

17    what he thinks or believes the actual sentence may turn out to

18    be, my decisions may be different from what your attorney has

19    advised you, do you understand that?

20    A    (Tarone) Yes, Your Honor.

21    A    (Salabarria) Yes, Your Honor.

22    Q    Do you understand that any recommendations that the United

23    States makes to me regarding sentencing in your case, whether

24    those recommendations are contained in your plea agreement or

25    whether they are made at the time of sentencing, they are only
```

```
 1    recommendations, and I am not required to follow the
 2    recommendations of the United States if I don't agree with
 3    them?
 4    A    (Tarone) Yes, Your Honor.
 5    A    (Salabarria) Yes, Your Honor.
 6    Q    Do you understand if you do not agree with the sentence I
 7    impose upon you in this case, your disagreement will not be a
 8    basis for you later to change your decision regarding your
 9    plea of guilty?
10    A    (Tarone) Yes, Your Honor.
11    A    (Salabarria) Yes, Your Honor.
12    Q    Do you understand that if I do not follow any of the
13    recommendations made by the United States regarding
14    sentencing, that also will not be a basis for you later to
15    change your decision regarding your plea of guilty?
16    A    (Tarone) Yes, Your Honor.
17    A    (Salabarria) Yes, Your Honor.
18    Q    Do you understand that the -- if you're given a prison
19    sentence in this case, that parole has been abolished, and you
20    would not be released from prison on parole?
21    A    (Tarone) Yes, Your Honor.
22    A    (Salabarria) Yes, Your Honor.
23    Q    Do you understand that the Sentencing Guidelines we have
24    been discussing are advisory only, they are not binding or
25    mandatory, and therefore I can sentence you above, or in
```

```
 1   excess of what the Sentencing Guidelines call for, or below,

 2   or less than what the Sentencing Guidelines call for?

 3   A    (Tarone) Yes, Your Honor.

 4   A    (Salabarria) Yes, Your Honor.

 5   Q    So as a result, do you each understand that there is a

 6   potential you could both be sentenced to the maximum permitted

 7   by law?

 8   A    (Tarone) Yes, Your Honor.

 9   A    (Salabarria) Yes, Your Honor.

10   Q    Has anyone made any promises or representations to you as

11   to what sentence I will impose upon you in this case?

12   A    (Tarone) No, Your Honor.

13   A    (Salabarria) No, Your Honor.

14   Q    Has anyone made any promises or representations to you

15   other than what's set forth in the plea agreement you signed?

16   A    (Tarone) No, Your Honor.

17   A    (Salabarria) No, Your Honor.

18         MR. BARON:  If the Court please, Mr. Roth, prior to

19   taking the plea, a few moments ago had asked if I would mind

20   if the sentencing, if he had the sentencing in September or

21   October.  I told him I did not object to a later sentencing.

22   I don't know what day would be picked, but he had asked about

23   it, and I had no objection to it.

24         MR. ROTH:  There was no promise, Judge, by the

25   Government.  Your Honor has signed an order permitting Mr.
```

```
 1    Tarone to spend parts of August with his family in the
 2    Bahamas, and Mr. Tarone has known about this investigation for
 3    approximately four years and has fully cooperated with the
 4    Government.  We're requesting -- I didn't know that we would
 5    address that now, but we're requesting that the Court set
 6    sentencing no earlier than the end of September based upon
 7    that and my schedule.
 8              MR. BARON:  I have no objection, Your Honor.
 9              MR. ROTH:  But there is no -- it's not part of the
10    plea agreement.  It was a discussion.
11              THE COURT:  Okay.
12              MR. ROTH:  Thank you.
13    BY THE COURT:
14    Q    All right.  Well, other than that discussion regarding
15    trying to schedule the sentencing in September, is there --
16    and the plea agreement, has there been any other
17    representations or promises made to you regarding this case?
18    A    (Tarone) No, Your Honor.
19    Q    Sir?
20    A    (Salabarria) No, Your Honor.
21    Q    All right.  Other than what's in the plea agreement, or,
22    Mr. Tarone, in your case this discussion about a September
23    sentencing, has anything been stated or represented to you in
24    order to induce you to plead guilty?
25
```

```
 1    A    (Tarone) No, Your Honor.

 2    A    (Salabarria) No, Your Honor.

 3    Q    Now, according to the plea agreement, the United States

 4    has agreed to recommend to me that when I calculate your

 5    guideline sentencing range, you both should receive either a

 6    two- or three-level reduction on the offense level under the

 7    Sentencing Guidelines because of your accepting responsibility

 8    in this case and for your actions and have agreed to plead

 9    guilty, and the Government's also agreed to recommend to me

10    that you both be sentenced at the low end of the advisory

11    guideline range.

12         Do you both understand that those recommendations are

13    made in the plea agreement?

14    A    (Tarone) Yes, Your Honor.

15    A    (Salabarria) Yes, Your Honor.

16    Q    And do you both understand that the -- it would be a

17    two-level reduction for accepting responsibility if, under the

18    Sentencing Guidelines, your offense level turns out to be 15

19    or less, and it would be a three-level reduction if, under the

20    Sentencing Guidelines, your offense level turns out to be 16

21    or more?

22    A    (Tarone) Yes, Your Honor.

23    A    (Salabarria) Yes, Your Honor.

24    Q    Now, do you both understand that in order to get the

25    benefit of these two recommendations from the United States,
```

```
1    there are three things set forth in paragraph 6 of your plea

2    agreements that you must comply with, and if you do not comply

3    with those three requirements, then the United States would

4    not be obligated to make those recommendations to me?

5    A    (Tarone) Yes, Your Honor.

6    A    (Salabarria) Yes, Your Honor.

7    Q    And do you understand that, again, because these are

8    recommendations, I'm not required or obligated to follow them

9    if I don't believe they are appropriate?

10   A    (Tarone) Yes, Your Honor.

11   A    (Salabarria) Yes, Your Honor.

12   Q    All right.  I'm going to just speak to Mr. Tarone for a

13   few minutes about your plea agreement.

14          Mr. Tarone, do you understand that as part of your

15   plea agreement, you have agreed to cooperate with the United

16   States regarding its investigation of this matter and any

17   other matters about which you might have some knowledge, and

18   in exchange for your agreement to cooperate with the United

19   States, the United States has agreed to evaluate the nature

20   and the extent of the cooperation you provide, and it has

21   agreed to determine whether, in its judgment, this cooperation

22   rises to the level of what's called substantial assistance?

23   Do you understand that's part of your plea agreement?

24   A    (Tarone) Yes, Your Honor.

25   Q    And do you understand that if the United States believes
```

```
 1    that your cooperation and assistance does rise to the level of

 2    substantial assistance, the Government has the right, if it

 3    chooses, to file a motion with the Court asking me to sentence

 4    you below the guideline sentencing range?

 5    A    (Tarone) Yes, Your Honor.

 6    Q    Now, sir, do you understand it's entirely up to the United

 7    States to evaluate the nature and the extent of the

 8    cooperation you provide, and it's entirely up to the United

 9    States to decide whether it does or does not rise to the level

10    of substantial assistance?  I have no involvement in making

11    that determination.

12    A    (Tarone) Yes, Your Honor, I understand.

13    Q    And do you understand it's entirely up to the United

14    States to decide whether to file a motion based upon the

15    assistance you provide or not file a motion based upon the

16    assistance you provide?  I, again, have no involvement in

17    making that decision.

18    A    (Tarone) Yes, Your Honor, I understand.

19    Q    And do you understand that even if the United States

20    believes you have provided substantial assistance, and it does

21    file a motion asking me to reduce your sentence because of

22    that assistance, I'm not required or obligated to grant the

23    motion if I do not believe it's appropriate?  Do you

24    understand that?

25    A    (Tarone) Yes, Your Honor.
```

```
 1   Q    Do you also understand, sir, that ordinarily when someone

 2   is sentenced by the Court, the person who is sentenced has the

 3   right to take an appeal and challenge the sentence before a

 4   higher court?

 5   A    (Tarone) Yes, Your Honor.

 6   Q    Do you understand that as part of your plea agreement, you

 7   have agreed to give up or waive your right to appeal the

 8   sentence in this case unless I sentence you in excess of what

 9   the law permits, unless I sentence you in excess or above what

10   the guideline range calls for, or unless the United States

11   decides to appeal the sentence?  Unless one of those three

12   things occurs, do you understand you have given up or waived

13   your right to appeal the sentence in this case?

14   A    (Tarone) Yes, Your Honor.

15   Q    Now, sir, did you understand your right to appeal the

16   sentence in this case when you signed your plea agreement?

17   A    (Tarone) Yes, Your Honor.

18   Q    Had you discussed that right with your attorney before you

19   signed your plea agreement?

20   A    (Tarone) Yes, Your Honor.

21   Q    Did you give up your right to appeal the sentence in this

22   case freely and voluntarily?

23   A    (Tarone) Yes, Your Honor.

24   Q    Did anyone force you or threaten you in any way to give up

25   that right?
```

```
1    A    (Tarone) No, Your Honor.

2    Q    Now, I'm speaking to both of you together.

3         Do you both understand that you have the right to

4    continue to plead not guilty in this case, and you each have

5    the right to have your case tried before a jury?

6    A    (Tarone) Yes, Your Honor.

7    A    (Salabarria) Yes, Your Honor.

8    Q    Do you understand that if you had a jury trial, you would

9    have the right to be represented by an attorney throughout the

10   trial, and if you could not afford an attorney, one would be

11   appointed to represent you?

12   A    (Tarone) Yes, Your Honor.

13   A    (Salabarria) Yes, Your Honor.

14   Q    Do you understand if you had a jury trial, you would be

15   presumed innocent of the charge the United States has brought

16   against you, and the United States would be required to prove

17   your guilt to the jury beyond a reasonable doubt?

18   A    (Tarone) Yes, Your Honor.

19   A    (Salabarria) Yes, Your Honor.

20   Q    Do you understand if you had a jury trial, you would have

21   the right to confront the witnesses the United States calls

22   against you, you'd have the right to have those witnesses

23   cross-examined in your presence, and you would have the right

24   to challenge all of the evidence that's presented against you

25   during the case?
```

```
 1    A    (Tarone) Yes, Your Honor.

 2    A    (Salabarria) Yes, Your Honor.

 3    Q    Do you understand if you had a jury trial, you would have

 4    the right, if you chose to exercise it, to testify in your own

 5    defense, you'd have the right to present other evidence and

 6    witnesses in your defense, and you would have the ability to

 7    subpoena witnesses to compel them to come in and testify in

 8    your defense?

 9    A    (Tarone) Yes, Your Honor.

10    A    (Salabarria) Yes, Your Honor.

11    Q    Do you understand if you had a jury trial, you would also

12    have the right not to testify or present evidence against

13    yourself if you chose not to?

14    A    (Tarone) Yes, Your Honor.

15    A    (Salabarria) Yes, Your Honor.

16    Q    And do you understand if you chose not to testify, the

17    United States could not use that decision against you and

18    argue to the jury that because you did not testify, the jury

19    should find you guilty?

20    A    (Tarone) Yes, Your Honor.

21    A    (Salabarria) Yes, Your Honor.

22    Q    Do you understand if you had a jury trial and the jury

23    found you guilty, you would have the right to take an appeal

24    and challenge the conviction before a higher court?

25    A    (Tarone) Yes, Your Honor.
```

```
1    A    (Salabarria) Yes, Your Honor.

2    Q    Do you understand that by pleading guilty in this case,

3    you will give up your right to a jury trial and all the rights

4    that are an aspect of a jury trial that we just discussed?

5    A    (Tarone) Yes, Your Honor.

6    A    (Salabarria) Yes, Your Honor.

7    Q    Do you also understand by pleading guilty in this case,

8    you both will be adjudicated guilty of a felony offense, and

9    as a result, you could be deprived of valuable civil rights,

10   such as the right to vote, the right to hold public office,

11   the right to serve on a jury and the right to possess any type

12   of firearm?

13   A    (Tarone) Yes, Your Honor.

14   A    (Salabarria) Yes, Your Honor.

15   Q    Do you also both understand that by pleading guilty in

16   this case, if you are not a United States citizen, you could

17   be deported from this country and not permitted to return?

18   A    (Tarone) Yes, Your Honor.

19   A    (Salabarria) Yes, Your Honor.

20   Q    Now, gentlemen, in addition to the plea agreements that

21   we've already talked about, I've also been handed a second

22   document for each of you called a "Factual Proffer."

23         Have you each seen the factual proffer that relates

24   to you?

25   A    (Tarone) Yes, Your Honor.
```

```
 1   A   (Salabarria) Yes, Your Honor.

 2   Q   And did you each read your particular factual proffer?

 3   A   (Tarone) Yes, Your Honor.

 4   A   (Salabarria) Yes, Your Honor.

 5   Q   And after you read your factual proffer, did you discuss

 6   it with your attorney?

 7   A   (Tarone) Yes, Your Honor.

 8   A   (Salabarria) Yes, Your Honor.

 9   Q   And after you read your factual proffer and discussed it

10   with your attorney, did you have a full and complete

11   understanding of all the facts set forth in the document?

12   A   (Tarone) Yes, Your Honor.

13   A   (Salabarria) Yes, Your Honor.

14   Q   And after you read the factual proffer, discussed it with

15   your attorney and understood it, did you sign the factual

16   proffer on the last page on the bottom signature line?

17       Mr. Tarone, is that your signature on your factual

18   proffer?

19   A   (Tarone) Yes, it is, Your Honor.

20   Q   And Mr. Salabarria, is this your signature on your factual

21   proffer?

22   A   (Salabarria) Yes, Your Honor.

23   Q   Did you sign the factual proffer freely and voluntarily?

24   A   (Tarone) Yes, Your Honor.

25   A   (Salabarria) Yes, Your Honor.
```

```
 1    Q    Did anyone force you or threaten you in any way to sign

 2    it?

 3    A    (Tarone) No, Your Honor.

 4    A    (Salabarria) No, Your Honor.

 5    Q    And did you each sign your factual proffer because, after

 6    reading it, understanding it, you agree that all the facts

 7    contained in that document are true and correct?

 8    A    (Tarone) Yes, Your Honor.

 9    A    (Salabarria) Yes, Your Honor.

10    Q    And do you also agree that the facts contained in the

11    document would support the charge against you to which you're

12    pleading guilty and would support your plea of guilty to that

13    charge?

14    A    (Tarone) Yes, Your Honor.

15    A    (Salabarria) Yes, Your Honor.

16    Q    And then based upon the facts contained in the factual

17    proffer that you both agree are true and correct, Mr. Tarone,

18    how do you plead to count 1 of the information, guilty or not

19    guilty?

20    A    (Tarone) Guilty, Your Honor.

21    Q    And Mr. Salabarria, how do you plead to count 1 of the

22    information, guilty or not guilty?

23    A    (Salabarria) Guilty, Your Honor.

24          THE COURT:  Anything else I need to cover with either

25    defendant before I accept their pleas?
```

1          MR. BARON:  No, Your Honor.

2          MR. ROTH:  No, Judge.

3          There's just one other matter that was a discussion.

4    I think it's pretty standard, but as I advised the Court, Mr.

5    Tarone has been cooperating with the Government for

6    approximately four years.  He has no prior criminal record.

7    The Government indicated they would have absolutely no

8    objection to a self-surrender in the event the Court imposed

9    any period of incarceration.

10         THE COURT:  Okay.  But is there anything else I need

11   to cover?

12         MR. ROTH:  No, sir, nothing else, Your Honor.

13         MR. BARON:  Not from the United States, Your Honor.

14         THE COURT:  Mr. Rodriguez?

15         MR. RODRIGUEZ:  No, Your Honor.

16         THE COURT:  In the cases of the United States of

17   America versus Theodore Tarone, Jr., and Raul Salabarria, it

18   is the finding of the Court that both defendants are fully

19   competent and capable of entering informed pleas, that they

20   are both aware of the nature of the charge and the

21   consequences of their pleas, that their pleas of guilty are

22   knowing and voluntary pleas, supported by an independent basis

23   in fact containing each of the essential elements of the

24   offense.

25         As to Mr. Tarone, the Court also finds that the

```
 1    Defendant has made a knowing, intelligent and voluntary waiver

 2    of his right to appeal the sentence in this case.

 3            The pleas are therefore accepted, and both defendants

 4    are now adjudged guilty of count 1 of the information.

 5            Now, gentlemen, as I mentioned, I'm going to order

 6    the probation office to prepare the presentence investigation

 7    report.  You have a right to, if you choose to, to meet with

 8    the probation officer who will prepare the report and

 9    participate in the preparation of the report.  If you do meet

10    with that probation officer, your attorney may be present with

11    you at that time.  And once the report is prepared, as we

12    discussed earlier, you will have the right to review that

13    report with your attorney and file objections, as will the

14    United States.  And we will discuss the report and any

15    objections at the time of sentencing, which I am going to

16    schedule for Mr. Salabarria for August 17th, that's Friday,

17    August 17th, 2012, at 2:30 p.m.

18            And for Mr. Tarone, when are we going to schedule

19    his?

20            MR. ROTH:  Judge, we discussed that, and either very

21    late September or preferably the first two weeks of October,

22    Judge.

23            THE COURT:  Okay.  I was actually talking to my

24    courtroom deputy, who's going to give me a date.

25            THE COURTROOM DEPUTY:  The last Friday is the 28th.
```

```
 1                   MR. ROTH:  Could we possibly do it -- I don't want to
 2       negotiate with the Clerk or the Court, Your Honor, but I would
 3       ask for the second week in October based on my schedule.
 4                   THE COURT:  Okay.  Why did we mention September?
 5                   MR. ROTH:  Actually, we mentioned September or
 6       October.
 7                   THE COURT:  Okay.  Why are we talking about September
 8       since you don't seem to want September?
 9                   MR. ROTH:  Judge, I will withdraw the request for
10       September.
11                   THE COURTROOM DEPUTY:  How about October 12, at 2:00.
12                   THE DEFENDANT:  That's my wife's birthday.
13                   THE COURTROOM DEPUTY:  How about October 5th?
14                   MR. ROTH:  Is the 19th available?
15                   THE COURTROOM DEPUTY:  Yes.
16                   MR. ROTH:  Since she's laughing, Judge, I assume it's
17       a positive sign.
18                   THE COURT:  You've got the whole day.
19                   MR. ROTH:  We'll take 2:00 o'clock, Judge.
20                   THE COURTROOM DEPUTY:  2:00 o'clock, October 19th.
21                   MR. ROTH:  It should take no longer than an hour,
22       hour and a half, Judge.
23                   THE COURT:  How long do you think it's going to take?
24       That means you expect issues?
25                   MR. ROTH:  I expect no issues or very minor issues,
```

1    but I do anticipate having four or five witnesses, Judge.

2          THE COURT:  Are they going -- who are going to

3    actually testify and be cross-examined, or they're just going

4    to give me statements about his character?

5          MR. ROTH:  Just the latter, Judge.  I don't

6    anticipate any cross-examination.

7          THE COURT:  Okay.  Then I think we can probably deal

8    with it in a half an hour, unless there are going to be issues

9    of guideline arguments.

10         MR. ROTH:  Judge, we basically agreed.  Mr. Baron has

11    been as professional as ever.  I don't anticipate any

12    substantial arguments, but you never know.  Could we ask for

13    an hour, Judge, just to be safe?

14         THE COURT:  Yes, you can ask for it.  I'm just trying

15    to understand why it would take an hour.  If there are not

16    going to be any guideline issues to argue about, all I'm going

17    to do is listen to a presentation about why I should reduce

18    his sentence below the guideline range, which, you know, I

19    hear every week, and I don't know why that's going to take

20    more than half an hour.

21         MR. ROTH:  In my older age I'm a little bit slower,

22    Judge.

23         THE COURT:  All right.  Mr. Roth, we're going to give

24    you an hour.  That doesn't mean you have to use it all.

25         MR. ROTH:  Believe me, I won't use it unless I have

```
 1   to.
 2              THE COURTROOM DEPUTY:  Let's put it at 3:00 o'clock.
 3              MR. RODRIGUEZ:  How much time do we have on
 4   August 17th?
 5              THE COURTROOM DEPUTY:  You have 30 minutes.
 6              THE COURT:  You need more than that?
 7              MR. RODRIGUEZ:  I don't think so, Your Honor.
 8   There's a threshold issue on the fraud loss amount.  There's
 9   an issue where my client's between two levels.  I don't know
10   if it's going to be a hearing, because I don't know if I'll
11   need a time, but I'll just call up and let you know ahead of
12   time.
13              THE COURT:  All right.
14              MR. ROTH:  I would like to go with the other
15   defendant because he's scheduled on the 17th, as well.
16              MR. BARON:  Judge, can I posit a guess?
17              THE COURT:  Yes.
18              MR. BARON:  My guess is that this case in its
19   entirety will be resolved, but my guess is that because of
20   some later resolution of the case, that the sentencing of two
21   other potential defendants may occur later than the August
22   date because of PSIs, and my guess is that you will receive
23   motions from, my guess Mr. Rodriguez and Mr. Watson on behalf
24   of their clients, to put off their sentencing until you can
25   hear the whole picture as to the other codefendants, as well.
```

```
1   That's my guess.  I can't tell you what's going to happen, but
2   I think that's already happened, in part, with Mr. Watson's
3   client, and I can see that happening again.
4          THE COURT:  I believe the two remaining defendants
5   are on a July, end of July calendar call, correct?
6          MR. BARON:  Yes, Judge.  That's the point that I
7   think if they take a plea somewhere near the end of July on
8   that, that would put sentencing somewhere into closer to
9   Mr. Roth's date.
10         THE COURT:  Right.
11         And so I guess I'm trying to --
12         MR. BARON:  No, no.  I -- in having spoken to one of
13  the attorneys, it was my understanding that he was hoping that
14  his client ultimately would be sentenced at least
15  contemporaneously with the others, and certainly at least
16  later than them, as opposed to before the others, and that was
17  set for August 17th, as this defendant is.  I don't know if
18  there's going to be a motion.
19         THE COURT:  I understand, and I'm just trying to
20  understand in my own mind.  I would think, maybe I'm wrong,
21  that if these other two defendants plead towards the end of
22  July, then -- or whatever cooperation has been provided by the
23  codefendants will have been provided, because that's why they
24  pled guilty.  And so there won't be any need to wait any
25  longer for you to decide whether to file a 5K or not.
```

```
 1              MR. BARON:  Judge, candidly, the only one we have any

 2   agreement with is Mr. Tarone.  I have no agreement with

 3   anybody else.  It was my understanding speaking with counsel

 4   that he was concerned --

 5              THE COURT:  Whose counsel?

 6              MR. BARON:  Mr. Ramirez's counsel, Bob Watson, that

 7   his client be sentenced at a time around when the first and

 8   second named defendants get sentenced, so that there's a

 9   perspective by this court.  That's what was in his pleading,

10   and that was my conversation with him.  So I was just saying

11   there may be another motion coming.  I don't know what's going

12   to happen.  I just wanted to give you a heads up.

13              THE COURT:  Okay.

14              MR. BARON:  I mean, I'm ready -- we're ready for

15   sentencing at any time.  It's not complicated.

16              THE COURT:  All right.

17              MR. ROTH:  Thank you, Judge.

18              THE COURT:  Well, I'll worry about somebody else

19   later.

20              Are you asking to be put off?

21              MR. RODRIGUEZ:  No, not yet.  Not yet.

22              THE COURT:  You were very worried about the

23   sentencing with Dr. whatever his name was, Atreidis being the

24   first one.  You were concerned about being the first one to go

25   in that case, so you're going to be concerned about being the
```

```
 1    first one to go in this case?

 2              MR. RODRIGUEZ:  That was for other reasons.  But, no,

 3    I'm not concerned being the first, because I know you'll have

 4    all the facts of all the other defendants to look at in the

 5    PSR at the time I get sentenced.  So presumably you'll have

 6    the total analysis that you need.  That's why I'm okay with

 7    August 17th at this point.  My only concern is I don't want to

 8    surprise Irene with a little more time that I might need, but

 9    I'll let you know.

10              THE COURT:  Anything else?

11              MR. ROTH:  No, sir.

12              THE COURT:  I presume the Defendants are going to

13    remain on bond pending sentencing?

14              MR. BARON:  No objection, Your Honor.

15              THE COURT:  All right.  Gentlemen, you're to remain

16    on bond on the same conditions as you have been since you were

17    released from custody, and we'll see you in August, or

18    September, or October, or at some point hopefully we'll see

19    you.

20              MR. ROTH:  Thank you, Your Honor.

21              MR. BARON:  Thank you, Judge.

22              THE COURT:  Have a good day.

23         (Proceedings concluded.)

24                        *  *  *  *  *

25
```

```
1                              *  *  *  *  *

2                             I N D E X

3    Testimony of the Defendants

4           Examination by the Court                4

5                              *  *  *  *  *

6                          E X H I B I T S

7    (None.)

8                              *  *  *  *  *

9                          CERTIFICATE

10       I, Stephen W. Franklin, Registered Merit Reporter, and

11   Certified Realtime Reporter, certify that the foregoing is a

12   correct transcript from the record of proceedings in the

13   above-entitled matter.

14       Dated this 19th day of MAY, 2014.

15

16       /s/Stephen W. Franklin
         _____
17       Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```